IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARGARET KANKAM,

                Plaintiff,

v.                                    Case No.   07-2554-KHV

UNIVERSITY OF KANSAS
HOSPITAL AUTHORITY,

                Defendant.

## ORDER

This matter comes before the court upon Defendant University of Kansas Hospital Authority's Motion to Compel Rule 35 Mental Exam, or in the Alternative, Motion to Preclude Specific Testimony Regarding Emotional Distress and Memorandum in Support (Doc. 36). Plaintiff filed an Objection to Defendant University of Kansas Hospital Authority's Motion to Compel Rule 35 Mental Exam (Doc. 38), to which defendant replied (Doc. 40). The court finds the issues are fully briefed and is therefore prepared to rule.

**I.    Background**

Plaintiff filed her Complaint in the United States District Court of the District of Kansas on November 20, 2007.[1] In her Complaint, plaintiff alleges that her employer discriminated against her on the basis of race by terminating her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq*. As part of her Complaint, plaintiff alleges she had suffered "damages in the form of embarrassment, humiliation, loss of dignity, mental anguish, anxiety and inconvenience."[2]

---

[1] Doc. 1.

[2] Plaintiff's Complaint (Doc. 1), ¶ 22.

The instant dispute arises out of defendant's request that plaintiff submit to an independent medical examination pursuant to Fed. R. Civ. P. 35. As best the court can discern, the parties informally discussed the possibility of plaintiff undergoing a medical examination but were unable to reach an agreement. On July 17, 2008, defendant emailed to plaintiff's counsel a letter seeking to confirm plaintiff's refusal to comply with defendant's request for a medical examination. The following day, July 18, 2008, plaintiff's counsel confirmed that she believed an examination was not appropriate in this case and plaintiff would not agree to submit to an examination. To date, plaintiff has declined to submit to any medical examination.

## II.     Parties' Contentions

Defendant contends that plaintiff should be required to submit to a mental examination because of her claims go beyond "garden variety" damages as she has made specific allegations through her deposition testimony and medical records that she suffers from insomnia, has consulted a physician to deal with the effects of her termination, has consulted with a mental health counselor to deal with the emotional pain of her termination and has been diagnosed with Post Traumatic Stress Disorder (PTSD). Defendant believes plaintiff has alleged specific allegations of harm by claiming she has suffered degradation, humiliation, nightmares, marital problems and has experienced difficulty concentrating. Moreover, defendant states that good cause exists to compel the examination as plaintiff has a specific mental disorder, PTSD, and is claiming unusually severe emotional distress. Defendant also alleges that plaintiff claims her harms are ongoing, thus establishing good cause.

Alternatively, defendant requests the court limit the trial testimony of plaintiff that goes beyond garden variety emotional distress, should the court deny the instant motion to compel.

Plaintiff counters that she is only asserting garden variety emotional distress damages and therefore her mental state is not in controversy. She notes that in her complaint she claimed compensatory damages in the form of embarrassment, humiliation, loss of dignity, mental anguish and inconvenience. She states she has not alleged any psychiatric disorder requiring counseling or a claim of unusually severe emotional distress. Additionally, she did not list any treating doctors in her Rule 26(a)(1) disclosures. She also objected to defendant's interrogatory requesting plaintiff identify any physician, psychologist, psychiatrist, therapist, counselor or other health care provider who she had consulted with or received treatment from since January 1, 1998 as not relevant or reasonably calculated to lead to relevant information because plaintiff was only claiming garden variety damages.

Also, plaintiff notes that defendant failed to provide specific information regarding the requested examination as required by Fed. R. Civ. P. 35. Thus, plaintiff contends that the court is without information, specifically regarding the degree of invasiveness, to determine if good cause exists to perform a mental examination.

Finally, plaintiff contends that the instant motion is untimely as defendant had up to July 18, 2008 within which to conduct an independent medical examination and disclose any expert it may have. Plaintiff's counsel states that she never received a formal request for an examination and was never provided information regarding the scope of the request or the name of the individual who would be performing the examination.

3

**III.   Analysis**

    **A.   Procedural Compliance and Certification**

The original deadline, as established in the Scheduling Order,[3] to complete any Rule 35 examination was May 16, 2008.  Defendant requested and was granted two extensions of this deadline.  Ultimately, the deadline was extended up to and including July 18, 2008.[4]  The court notes that the standard form of the Parties' Planning Conference, available on the District's website, advises counsel that, "If the parties presently disagree about the need for or the scope of [a Rule 35 exam], a formal motion to conduct the examination should be filed sufficiently in advance of the deadline set in [the Scheduling Order] in order to allow the motion to be fully briefed by the parties and decided by the court before the examination deadline."

The court finds that defendant has failed to fulfill this directive by the court.  Plaintiff first objected to defendant's request of information regarding treating physicians or counselors on May 14, 2008.[5]  Plaintiff's supplemental answers to defendant's interrogatories also objected to the request for such information.[6]  Rather than confer with plaintiff to resolve the dispute at the time or file a timely motion, defendant chose to request two extensions of the Rule 35 examination deadline.  Thus, sixty days passed from the time defendant was first put on notice that there was a disagreement regarding the appropriateness of a Rule 35 examination and when defendant filed the instant motion on the extended exam deadline.  This conduct by defendant

---

[3] Doc. 8.

[4] *See* Order (Doc. 25).

[5] *See* Certificate of Service of Answers and Responses to Defendant's First Set of Interrogatories to Plaintiff (Doc. 14).

[6] *See* Plaintiff's First Supplemental Responses to Defendant's First Set of Interrogatories to Plaintiff (Doc. 36) at Ex. D.

does not comport with the court's request to have any Rule 35 exam fully briefed before the expiration of the exam deadline.

Additionally, the court considers whether defendant has satisfied the good faith certification requirement. Fed. R. Civ. P. 37(a)(2)(B) requires that a motion to compel include "a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."[7] Thus, "[b]efore filing a motion, the movant must make reasonable efforts to confer."[8] "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party."[9] "It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[10] "When a party certifies compliance with conference requirements, whether by a separate document or within the motion and supporting memoranda, it should set forth with particularity the steps taken to resolve the dispute."[11]

The court finds that the defendant has failed to satisfy the requirements of Rule 37(a)(2)(B). Nowhere in the motion to compel does defense counsel certify that the parties have adequately conferred in an attempt to resolve the dispute without court intervention. Indeed, there are no facts which give the court any indication that the parties took significant steps to

---

[7] Fed. R. Civ. P. 37(a)(2)(B). *See also* D. Kan. R. 37.2 (stating that "[e]very certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes shall describe with particularity the steps taken by all counsel to resolve the issues in dispute").

[8] *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 458 (D. Kan. 1999).

[9] D. Kan. R. 37.2.

[10] *Id.*

[11] *VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, No. Civ.A. 98-2183, 1999 U.S. Dist. LEXIS 8908 (D. Kan. June 8, 1999).

resolve the dispute.  Defense counsel's only evidence of conferral is the July 17, 2008 letter he sent to plaintiff's counsel.  The letter states that should plaintiff agree to an examination she should provide available dates, otherwise, defendant would file an appropriate motion with the court.  The letter was sent the day before any Rule 35 exam was to be completed.  This can hardly be considered adequate conferral.  This District's Local Rules specifically state that simply mailing a letter to the opposing party will not suffice.  Therefore, the court cannot conclude that the parties conferred in a good faith attempt to resolve the dispute.  Even so, the court will address the merits of the instant motion.

**B. Discovery Standards**

Fed. R. Civ. P. 35(a) states in pertinent part, [t]he court may order a party whose mental or physical condition is in controversy to submit to a mental examination by a suitably licensed or certified examiner.[12]  The rule goes on to say that the order requiring a party to submit to an examination must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.[13]  The court believes that Rule 35 is consciously designed to be somewhat restrictive to guard against the use of requests for mental examinations as a tool for harassment, intimidation or delay in what courts have described as "garden variety" cases.[14]

Thus, in order to obtain the court's permission to conduct a mental examination of plaintiff, defendant must demonstrate that plaintiff's mental condition is "in controversy" and

---

[12] Fed. R. Civ. P. 35(a)(1).

[13] Fed. R. Civ. P. 35(a)(2)(B).

[14] *Thiessen v. General Electric Capital Corp.*  178 F.R.D. 568, 570 (D. Kan. 1998).

that "good cause" exists to conduct the requested examination.[15] Significantly, the "in controversy" and "good cause" requirements of Rule 35 are not met by mere conclusory allegations of the pleadings — nor by mere relevance to the case — but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.[16]

Garden variety emotional distress claims do not place the plaintiff's mental condition "in controversy" for the purposes of justifying a mental examination under Rule 35.[17] "Garden variety" claims include damages for mental anguish, mental distress, emotional pain, anxiety, embarrassment, humiliation, career disruption, and inconvenience foreseeably flowing from defendant's actions.[18]

After careful review of plaintiff's deposition testimony, the court finds she has alleged only garden variety damages. Plaintiff described her emotional distress as being degraded and humiliated as a result of her termination.[19] When asked if there was anything else she could recall about her emotional distress, plaintiff responded she could not think of anything at the time.[20] Thereafter, defense counsel asked specifically if plaintiff suffered from depression as a

---

[15] *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964) ("Rule 35 ... requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination ... has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause'....").

[16] *Schlagenhauf*, 379 U.S. at 118.

[17] *Thiessen v. General Electric Capital Corp.* 178 F.R.D. 568, 569 (D. Kan. 1998).

[18] *Owens v. Sprint/United Management Co.*, 221 F.R.D. 657, 659 (D. Kan. 2004).

[19] Defendant's Motion to Compel (Doc. 36) Ex. B at p. 3; (Deposition of Margaret Kankam 8:8-15).

[20] *Id.* (Deposition of Margaret Kankam 9:10-12).

7

result of her termination.  Plaintiff did not state she was depressed, only that she thinks about what happened to her every day.[21]  Also as a result of direct questioning, plaintiff stated that she saw her primary doctor because she could not sleep, but that the only medication she was prescribed was for high blood pressure.[22]  Finally, plaintiff responded to additional questioning that she had seen a counselor twice – in a six-week period of time (March 28, 2008 and May 8, 2008) – because she could not get the termination out of her mind.[23]  She elaborated that the counselor helped her cope with the loss of her job and that since the second counseling session she has not needed to seek additional treatment.[24]

The court finds it particularly important that plaintiff herself only offered that she had been degraded and humiliated.  She also declined to state that she was depressed.  It appears plaintiff's emotional distress relates to her being unable to stop thinking about her termination.  Only upon follow up questions from defense counsel, did plaintiff state she had sought medical treatment or counseling.  This treatment was minimal, consisting of one doctor's visit and two counseling sessions.  The court further notes that these claims are consistent with plaintiff's Complaint and discovery responses.  Plaintiff has always maintained she is only asserting a claim for garden variety damages.  Her Complaint requests compensatory damages in the form of embarrassment, humiliation, loss of dignity, mental anguish and inconvenience.  She did not disclose any treating physicians in her initial disclosures and specifically objected to an

---

[21] *Id.* (Deposition of Margaret Kankam 9:15-23).

[22] *Id.* (Deposition of Margaret Kankam 10:1-22 & 11:2-7).

[23] *Id.* (Deposition of Margaret Kankam 13: 2-15); and Defendant's Motion to Compel (Doc. 36), Ex. D, p. 1-2 (Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories, at Interrogatory No. 1).

[24] *Id.* (Deposition of Margaret Kankam 15: 13-15).

interrogatory requesting such information on the basis that she was only seeking garden variety damages.

Defendant contends that plaintiff has alleged numerous other instances of emotional distress including nightmares, marital problems, difficulty concentrating and insomnia. Defendant also argues that, because plaintiff's counselor diagnosed her with PTSD, her mental condition is at issue. The court notes, however, that these harms were never specifically alleged by plaintiff. Instead, they are found in plaintiff's medical and counseling records which plaintiff has contended are not relevant because she is only asserting a claim for garden variety damages. While plaintiff may have suffered from PTSD, she has never affirmatively asserted such a diagnosis as part of her emotional distress damages. Finally, defendant construes plaintiff's statement that she "thinks about what was done to her everyday" as an ongoing harm, which would necessitate a mental examination. The court disagrees. Nowhere does the record reflect that plaintiff has alleged her damages are ongoing nor does plaintiff make a claim for future damages.

Defendant has cited two cases from the District of Kansas to support its contention that plaintiff has alleged several specific injuries, thereby claiming more than just garden variety emotional distress damages. First, in *Thiessen v. General Electric Capital Corp.*,[25] the district court compelled an examination where it found plaintiff's mental condition "inextricably intertwined with the full story which is expected to unfold at trial."[26] In *Thiessen* the plaintiff asserted he suffered from congestive heart failure, water in his lungs, lack of sleep, trouble with

---

[25] 178 F.R.D. 568 (D. Kan. 1998).

[26] *Id.* at 571.

interrogatory requesting such information on the basis that she was only seeking garden variety damages.

Defendant contends that plaintiff has alleged numerous other instances of emotional distress including nightmares, marital problems, difficulty concentrating and insomnia. Defendant also argues that, because plaintiff's counselor diagnosed her with PTSD, her mental condition is at issue. The court notes, however, that these harms were never specifically alleged by plaintiff. Instead, they are found in plaintiff's medical and counseling records which plaintiff has contended are not relevant because she is only asserting a claim for garden variety damages. While plaintiff may have suffered from PTSD, she has never affirmatively asserted such a diagnosis as part of her emotional distress damages. Finally, defendant construes plaintiff's statement that she "thinks about what was done to her everyday" as an ongoing harm, which would necessitate a mental examination. The court disagrees. Nowhere does the record reflect that plaintiff has alleged her damages are ongoing nor does plaintiff make a claim for future damages.

Defendant has cited two cases from the District of Kansas to support its contention that plaintiff has alleged several specific injuries, thereby claiming more than just garden variety emotional distress damages. First, in *Thiessen v. General Electric Capital Corp.*,[25] the district court compelled an examination where it found plaintiff's mental condition "inextricably intertwined with the full story which is expected to unfold at trial."[26] In *Thiessen* the plaintiff asserted he suffered from congestive heart failure, water in his lungs, lack of sleep, trouble with

---

[25] 178 F.R.D. 568 (D. Kan. 1998).

[26] *Id.* at 571.

his fiancee and great sadness or depression as a result of defendants' alleged misconduct.[27] The court finds the instant facts to be distinguishable. Plaintiff stated in her deposition that she felt degraded and humiliated and had experienced trouble sleeping. She never affirmatively alleged such specific and numerous conditions as in *Thiessen*.

Also, in *Greenhorn v. Marriott International, Inc.*,[28] the court compelled an examination where the plaintiff had alleged she suffered from insomnia, severe depression, avoidance, withdrawal, suicidal ideation, suspiciousness, social discomfort, low self-esteem and resentfulness.[29] The court found it significantly important that plaintiff had identified her own expert who was expected to testify that plaintiff was severely depressed and suffered from PTSD.[30] The court notes that in *Greenhorn* the plaintiff affirmatively alleged she suffered from specific, diagnosable conditions and identified an expert to substantiate her claims. In the instant dispute, plaintiff has consistently maintained she is seeking no more than garden variety damages and her answers to discovery and her testimony corroborate this claim.

Even if the court had found plaintiff placed her physical and mental condition in controversy, defendant has failed to show that good cause exists to warrant a Rule 35 examination. The majority of courts will not find good cause to require a plaintiff to submit to a medical examination unless, in addition to a claim for emotional distress damages, one or more of the following factors is also present: (1) plaintiff has asserted a specific cause of action for

---

[27] *Id.* at 570.

[28] 216 F.R.D. 649 (D. Kan. 2003).

[29] *Id.* at 651.

[30] *Id. at 652.*

10

intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder, (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of his claim for emotional distress damages; and (5) plaintiff concedes that his mental condition is "in controversy" within the meaning of Rule 35(a).[31]

Defendant contends that plaintiff has asserted both that she suffers from a specific mental disorder and that she has claimed unusually severe emotional distress. Again, the court finds that plaintiff has never affirmatively alleged specific facts which rise above the level of garden variety damages. Even when questioned about her counseling sessions, plaintiff did not testify that she had been diagnosed with PTSD. Instead, plaintiff's only allegations were that she was degraded, humiliated, thought about what had happened to her every day and had experienced trouble sleeping. The court finds these allegations do not evidence unusually severe emotional distress.

The court is also hesitant to compel an examination in this case where defendant has provided absolutely no details regarding the scope of the examination, the proposed examiner, or the time, manner or conditions of the exam. By leaving the court uninformed regarding such important facts, the defendant has failed to show appropriate safeguards against harassment and intimidation have been secured. Considering the restrictive nature of Rule 35, the court is not inclined to grant such an unbridled examination, especially when the facts show no more than a claim for garden variety damages.

As a result of the court finding a Rule 35 examination is not appropriate in this case, the

---

[31] *Phalp v. City of Overland Park, KS,* No. 00-2354-GTV, 2001 WL 1717949, at *1 (D. Kan. 2001).

11

defendant has also asked that plaintiff's trial testimony be limited to evidence regarding garden variety emotional distress. Defendant argues the court should exclude evidence including plaintiff's inability to sleep, her consultations with physicians and counselors, her allegations of nightmares, insomnia, fear or avoidance of going outside and marital problems and her diagnosis of PTSD. Plaintiff agrees that only evidence related to garden variety emotional distress should be admissible, but finds defendant's description of prohibited testimony overbroad. The court finds the question of evidence admissibility should come before the District Court by way of a fully-briefed Motion in Limine. Using this approach, the parties may specifically argue the relevance and admissibility of the questioned evidence and the presiding judge may rule on the motion.

**IT IS THEREFORE ORDERED** that Defendant University of Kansas Hospital Authority's Motion to Compel Rule 35 Mental Exam, or in the Alternative, Motion to Preclude Specific Testimony Regarding Emotional Distress and Memorandum in Support (Doc. 36) is hereby denied.

**IT IS SO ORDERED.**

Dated this 23d day of September, 2008, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
